IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**IRIS Z. CARRASQUILLO-ROSA**,
    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 18-1964 (BJM)

## OPINION & ORDER

Plaintiff Iris Z. Carrasquillo-Rosa ("Carrasquillo") filed the present case challenging the Commissioner of the Social Security Administration's ("Commissioner's") denial of her petition for Social Security disability insurance benefits. Docket No. ("Dkt.") 4. In due course, the Commissioner filed a consent motion to remand pursuant to sentence four of 42 U.S.C. § 405(g), requesting that the court reverse and vacate the agency's termination of benefits in accord with 42 U.S.C. § 405(u) and that Carrasquillo's benefits be reinstated retroactive to the date of termination. Dkt. 24. The parties having consented to proceed before me, Dkts. 5, 7, 8, I granted the motion. Dkt. 25. Judgment in the case was entered on February 27, 2020. Dkt. 26.

On May 27, 2020, Carrasquillo's counsel, Pedro G. Cruz Sanchez ("Cruz"), filed a motion for attorney fees in the amount of $2,511.07 pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Dkt. 27. I granted the motion for attorney fees accordingly. Dkt. 29.

On November 19, 2020, Cruz filed a motion to extend the deadline to file for attorney fees pursuant to § 406(b) of the Social Security Act ("406(b)"). Dkt. 30. Cruz then filed the present motion on May 2, 2022, requesting fees in the amount of $12,000.00. Dkt. 31 at 1. For the reasons explained below, Cruz's motion for attorney fees pursuant to 406(b) is **GRANTED IN PART**.

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 2 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                           2

## APPLICABLE LEGAL STANDARDS

In Social Security cases, attorney fees can be obtained pursuant to the EAJA or the Social Security Act, 42 U.S.C. § 406. Fee awards may be made under both the EAJA and 406(b), but if fees are awarded under both, the attorney claiming the award must refund the lesser award to the client. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); 28 U.S.C. § 2412.

Under the EAJA, a party prevailing against the United States in court, including a successful Social Security benefits claimant, may be awarded fees payable by the United States if the government's position in the litigation was not "substantially justified." § 2412(d)(1)(A); *see also Gisbrecht*, 535 U.S. at 796. EAJA fees are determined not by a percent of the amount recovered, but by the "time expended" and the attorney's "[hourly] rate," § 2412(d)(1)(B), which is capped at $125 per hour. § 2412(d)(2)(A). *See Gerardo Dieppa-Velázquez v. Comm'r of Soc. Sec.*, 19-CV-1574 (CVR) (D.P.R. May 25, 2021).

However, as noted above, a reasonable fee may be awarded to an attorney who successfully represented a claimant in federal court under 42 U.S.C. § 406(b)(1)(A). When a court renders judgment favorable to a Social Security claimant who has legal representation, the court may allow "a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). Unlike the EAJA, however, 406(b) does not authorize the prevailing party to recover fees from the losing party. Instead, 406(b) authorizes fees payable from the successful party's recovery. *Gisbrecht*, 535 U.S. at 795.

The Commissioner has interpreted 406(b) to "prohibi[t] a lawyer from charging fees when there is no award of back benefits." *Id*. A court may award fees under 406(b) when, for example, "the court remands . . . a case for further proceedings and the Commissioner ultimately determines that the claimant is entitled to an award of past-due benefits." *McGraw v. Barnhart*, 450 F.3d 493-

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 3 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                    3

96 (10th Cir. 2006). However, 406(b) is not meant to permit counsel to request inordinate or unreasonable fees under the guise of a contingency fee agreement. 406(b) calls for court review of contingent fee arrangements between claimants and counsel to assure that they yield reasonable results. Agreements are also de facto unenforceable if they provide for fees exceeding 25 percent of the past-due benefits. § 406(b)(1)(A). Even within the 25 percent boundary, plaintiff's counsel must show that the fee sought is reasonable given the services rendered. *Id*. Courts must ensure that fees are reasonable even if they are less than 25% of the past-due benefits, as there is no presumption that 25% is reasonable. *Gisbrecht*, 535 U.S. at 807 n.17.

In determining a reasonable fee, a court should look first to the contingent fee arrangement, then test for reasonableness "based on the character of the representation and the results the representative achieved." *Id*. at 808. Factors relevant to reasonableness include: (1) whether the attorney's representation was substandard; (2) whether the attorney was responsible for any delay in the resolution of the case; and (3) whether the contingency fee is disproportionately large in comparison to the amount of time spent on the case. *Id*. The claimant's attorney can also be required to submit a record of the hours spent representing the claimant and a statement of the lawyer's normal billing rate for non-contingency fee cases. *Id*. "If the benefits are large in comparison to the amount of time counsel spent on a case, a downward adjustment is similarly in order." *Id*. (citations omitted).

The statute does not specify a deadline for requesting fees. District of Puerto Rico Local Rule 54(b) states that "An application for attorneys' fees in those cases for which fees have been contracted . . . shall be filed within fourteen (14) days of the expiration of the time for filing a timely appeal." Furthermore, District of Puerto Rico Local Rule 9(d)(2) was amended effective on February 28, 2022 to state that "[a] party seeking attorneys' fees pursuant to 42 U.S.C. § 406(b)

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 4 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                    4

shall have thirty (30) days after counsel's receipt of the original, amended, or corrected Notice of Award, or the Social Security Correspondence sent at the conclusion of the Agency's past-due benefit calculation, stating the amount withheld." *See* 03-MC-115, Dkt. 71-1. Local Rule 1(a) provides that "[t]he Court may modify [the local] rules in exceptional circumstances or when justice so requires."

## DISCUSSION

The fee agreement between Carrasquillo and Cruz provides for Cruz to receive up to 25 percent of Carrasquillo's past-due benefits. Dkt. 31-2 (mislabeled in docket).

The award notice (termed the Notice of Award, or "NOA") was apparently faxed to Cruz by the Social Security Administration ("SSA") on April 27, 2022. Dkt. 31-1 (mislabeled in docket). I recently ruled in a separate case involving Cruz that under Local Rule 54(b), a fourteen-day filing deadline applies to 406(b) motions and that the countdown to this deadline begins upon delivery of the NOA to counsel. *Lebron-Vazquez v. Comm'r of Soc. Sec.*, 18-CV-1281 (BJM), 2022 WL 225287, at *4 (D.P.R. Jan. 26, 2022). However, as noted above, Local Rule 9(d)(2) has since been amended to grant a party seeking 406(b) attorney fees thirty days after counsel's receipt of the NOA to file such a request. It is not immediately clear that Local Rule 9(d)(2) applies retroactively. Regardless, since Cruz filed his motion on May 2, 2022, less than a week after receiving the NOA from the SSA, neither countdown to the filing deadline has been triggered and Cruz has filed his motion in timely fashion.

I next turn to the reasonableness of the fees requested. Cruz's request does not exceed the statutory cap of 25% of Carrasquillo's past-due benefits. Indeed, Cruz claims that his request is proper not only because of the contingent nature of his representation of Carrasquillo, but also because the contract between himself and Carrasquillo provides that Cruz may seek up to 25% of

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 5 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                    5

the past due benefits awarded to Carrasquillo; he also notes that his request represents a relatively small percentage of Carrasquillo's past-due benefits. Cruz notes that Carrasquillo's representative at the administrative level has received $6000.00 for his services on behalf of Carrasquillo and implies that he should receive more, claiming that his work at the district court level is what led to the administrative level representative's supposed windfall. Cruz maintains that his request is reasonable because the case was resolved in favor of his client and the requested fee award is not unjust. In this vein, Cruz argues that other recent decisions implicitly relied upon a "lodestar" method in calculating attorney fees, which Cruz claims is impermissible in 406(b) cases. Cruz then goes on to note that he spent a significant amount of nonbillable hours learning about fraud redetermination cases like the present one and provides declarations from other Social Security lawyers stating that it is rare for attorneys to take on or win fraud redetermination cases.

It is up to the courts to determine whether a fee amount requested pursuant to 406(b) is reasonable. *See Gisbrecht*, 535 U.S. at 807. When determining if a fee is reasonable, courts should first look to the contingent fee arrangement, then test for reasonableness based on the character of the representation and the results the representative achieved. *Id*. at 808. Cruz states that he spent a total of 12.3 hours working on Carrasquillo's case at the district court level. Dkt. 31 at 2. Cruz's 406(b) fee petition therefore amounts to a *de facto* rate of approximately $975.61 per hour, or the requested $12,000.00 divided by the 12.3 hours Cruz says he expended on the case.

If the *de facto* hourly rate was the only relevant factor in the present matter, I would find that the amount requested by Cruz is excessive. However, I must also weigh other relevant factors. For example, as Cruz claims, the fee amount requested by Cruz ($12,000.00) does comply with the statutory cap because it is less than 25% of Carrasquillo's past-due benefits. According to a letter from the SSA appended to the NOA, the SSA withheld $23,352.50 for payment of

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 6 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                                      6

representative's fees; since the administrative representative was paid $6000.00, this amount is now $17,352.50. Dkt. 31-1 at 1. Although Cruz presents the NOA materials in haphazard fashion without context and the total amount of fees due to Carrasquillo is not entirely clear, the SSA typically withholds only 25% of a claimant's past-due award for payment of such fees, and indeed a $12,000.00 award would appear to comply with the statutory cap. Furthermore, there is no indication that Cruz's conduct was improper or that his representation was significantly substandard; there is also no indication that the terms of the contingent fee agreement reached by Cruz and Carrasquillo were unreasonable, and the agreement provides for Cruz to receive up to 25% of Carrasquillo's past-due benefits. Though courts have the duty to serve as an independent check regarding the reasonableness of fees requested pursuant to 406(b), this duty must be balanced against a client and her attorney's free and willful decision to enter into a contingency-fee agreement and their right to have that agreement upheld. *See Falcon v. Comm'r of Soc. Sec.*, 19-CV-1914 (MDM), Dkt. 32 at 8. Additionally, it has been clearly established that a fee should not be reduced unless it is "inordinately large." *See, e.g.*, *Gisbrecht*, 535 U.S. at 806-07.

As noted above, Cruz alleges that he spent a significant amount of nonbillable hours learning about and generally preparing for fraud redetermination cases. However, he does not explain with any level of precision how much time he has spent learning about or preparing for such cases, making it difficult to take such steps into account when making a fees award in any individual case. Relatedly, Cruz provides declarations from other Social Security lawyers stating that it is rare for attorneys to take on or win fraud redetermination cases, though he does not address whether there were signs from the beginning that the cases he has obtained remand in (most or all of which appear to share factors in common with one another) had more merit than most such cases. He also provides very little in terms of suggestions, citations, or guidance as to how the

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 7 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                    7

court should account for either of these vaguely articulated points in awarding him fees. Given that it is unclear how much time Cruz has spent learning about fraud redetermination cases, how many such cases he has already taken on, and how many he will be able to take on over the course of his career, it appears nigh on impossible to account for the time he has spent in familiarizing himself with such matters within any single case in determining an attorney fee award.

Furthermore, though Cruz provides helpful context suggesting that he engaged in advance preparation for cases like this one that does not show up in his hours billed, all indications are that Cruz's work on this particular case was minimal. The government voluntarily moved to remand the case before Cruz even filed a memorandum of law on behalf of his client. The work product that Cruz submitted to the court at the federal level on Carrasquillo's behalf was limited to a boilerplate motion to proceed in forma pauperis, Dkt. 2; a boilerplate financial affidavit completed by Carrasquillo, Dkt. 1; a generic two-page complaint with attached summons and insubstantial supplemental materials, Dkt. 4; a boilerplate notice of appearance, Dkt. 3; a boilerplate consent form to proceed before a magistrate judge, Dkt. 5; a boilerplate motion to prove service of summons, Dkt. 12; and two two-page motions to extend the deadline to file a memorandum of law on behalf of Carrasquillo that are essentially identical to one another and lack any real substance. Dkts. 20, 22. Although it does appear that Cruz at least began to draft a memorandum of law in this matter, Cruz has still not explained why his work on this particular case has been anything more than minimal.

Additionally, the amount requested by Cruz is not in line with other recent Social Security attorney fee awards made to Cruz and others by this court for similar or even more substantial work. Again, Cruz would receive $975.61 per hour were I to grant his motion in full. In a variety of recent cases, this court has awarded fees in or around the $600.00 to $700.00 per hour range for

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 8 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                    8

similar work by Cruz and others. *See, e.g., Pagan-Torres v. Comm'r of Soc. Sec.*, 18-CV-1921 (MDM), Dkt. 42 (granting an award of $5,111.00 in attorney fees for 8.3 hours of billable work despite denying the attorney's full claim of $11,000.00 as excessive, which amounts to approximately $615.78 per hour); *Santiago Diaz v. Comm'r of Soc. Sec.*, 19-CV-1139 (MEL), 2022 WL 420443, at *2 (D.P.R. Feb. 11, 2022) (granting an award of $6,180.00 to Cruz for 10.3 hours of billable work despite denying $25,000.00 as excessive, which amounts to $600.00 an hour); *De Jesus-Rivera*, 2022 WL 405648 at *2 (granting $13,000.00 for 18.5 hours of work despite denying $15,203.00 as excessive, amounting to approximately $702.70 an hour); *Miranda-Hernandez v. Comm'r of Soc. Sec.*, 18-CV-1235 (BJM), 2022 WL 1079186, at *3 (D.P.R. Apr. 11, 2022) (granting Cruz $14,000.00 for 21.2 hours of work for a total of approximately $660.38 per hour while noting that this rate was "at the outer limits"). An award of $975.61 per hour would far exceed these admittedly loose bounds, particularly given the limited nature of Cruz's representation of Carrasquillo.

I note in passing that in looking to these cases, I am not calculating Cruz's fees pursuant to a lodestar method. I am not aware of any cases in which this court has failed to take factors other than the *de facto* hourly rate into account when calculating 406(b) fees, and indeed Cruz fails to cite any case that actually does so despite his claims. Looking generally to hourly rates awarded by this court in other (often highly similar) cases for guidance – one of several factors that this court regularly takes into account in awarding 406(b) fees – is not at all analogous to calculating Cruz's fees in accordance with a lodestar method. As a result, I reject Cruz's claim that certain recent decisions from this court "only" address the work he has performed by looking to de facto rates and the implication that those cases rely upon a "lodestar" approach.

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 9 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                         9

Cruz argues that he should obtain a larger fee because of non-billable time he has spent familiarizing himself with fraud redetermination cases. While I have taken into account all of the context that Cruz has provided me with and always do in these cases, in awarding Cruz attorney fees, I have also always assumed that as a competent lawyer, Cruz would do the legwork necessary to stay on top of relevant trends in Social Security cases he took on (including fraud redetermination cases) and would pursue the knowledge necessary to represent his clients to the best of his abilities in these admittedly tricky matters. Cruz provides no strict estimate of how much time he has actually spent on learning more about fraud redetermination cases or how his capacities as a lawyer have improved as a result of the knowledge he has gained in this area of Social Security law, making it difficult to take his commitment to learning more about this area of the law into account. While I appreciate the fact that Cruz has taken the time to educate himself regarding fraud redetermination cases, all he has told the court is that he has spent multiple hours (though whether this number reaches two or perhaps two dozen is entirely unclear) meeting with other lawyers in order to discuss such cases. This is not a particularly unusual or noteworthy move, particularly given the volume of such cases Cruz has taken on, and it is unclear how this court should take that fact into account in any particular case. I also appreciate that it is likely that these fraud redetermination cases were at least somewhat of a risk for Cruz to take on, but Cruz has failed to show just how much of a risk taking on these particular cases represented, and there are nonetheless many contravening factors that support reducing Cruz's 406(b) award regardless.

Furthermore, the Second Circuit case cited by Cruz in support of his claim that he should be awarded $12,000.00 does not clearly weigh in his favor. In *Fields v. Kijakazi*, 24 F.4th 845 (2d Cir. 2022), the Second Circuit noted that among the factors a court should consider in awarding 406(b) fees besides the de facto rate are (1) the ability and expertise of the lawyers involved and

whether they were particularly efficient; (2) the nature and length of the professional relationship with the claimant, including any representation at the agency level; (3) the satisfaction of the client; and (4) how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result. *Id.* at 854-56. None of these factors weighs indisputably in Cruz's favor. While Cruz has provided affidavits indicating that it is highly uncertain that most Social Security fraud redetermination cases will result in an award of benefits, as indicated above he has not made any showing that the cases he took on were typical in this regard or if there were indications from the beginning that they had more substance to them than the average fraud redetermination claim. Furthermore, Cruz has made no showing that it took any special effort for him to achieve the result he did in this particular case. Indeed, the short nature and length of his relationship with and representation of Carrasquillo (which did not include representation at the agency level) implies that this specific case did not require a lot of effort on his part. Cruz has made no showing that his representation of the client here displayed any particular ability, expertise, or efficiency, and while there is no reason to believe that Carrasquillo is unsatisfied with his representation of her, he has made no showing that she is particularly satisfied either. Cruz also admits that "large fee authorizations" like the one in *Fields v. Kijakazi* or the one he requests here are "not frequent occurrences." Dkt. 31 at 9.

On balance, I find that Cruz's request is unreasonable, though I am prepared to grant Cruz's request in part. As addressed above, Cruz suggests no practical way of accounting for most of the factors he cites as supporting the rate he requests, such as general background research he performed regarding fraud redetermination cases or the supposedly relatively low rate of success in such cases overall. He also provides only nominal support for the idea that this court should account for these factors in awarding him 406(b) fees. Furthermore, not only is $975.61 an hour

Case 3:18-cv-01964-BJM   Document 37   Filed 08/11/22   Page 11 of 11

*Carrasquillo-Rosa v. Comm'r of Soc. Sec.*, Civil. No. 18-1964 (BJM)                                                                 11

an inordinately high rate that greatly exceeds other recent awards made by this court for similar work, but Cruz's representation of Carrasquillo appears to have been particularly minimal in scope. Accordingly, I reduce Cruz's award "not only because of the excessive de facto rate, but also because prior to the judgment entered by the court remanding this case to the Commissioner of Social Security, plaintiff's counsel did not file any motion or pleading that exceeds two pages in length, none of the filings contain any legal analysis, and most of them rely on boilerplates or templates." *Santiago Diaz*, 2022 WL 420443 at *2. Consistent with *Santiago Diaz*, a case in which the salient facts are essentially identical, I shall reduce Cruz's award to reflect a rate of $600.00 an hour, or $7,380.00 in total. *Id*. (awarding Cruz $6,180.00 to Cruz for 10.3 hours of billable work).

## CONCLUSION

For the foregoing reasons, Cruz's petition for attorney fees under 406(b) is **GRANTED IN PART** and payment of $7,380.00 in attorney fees to Cruz is authorized. Cruz is ordered to refund Carrasquillo $2,511.07 in fees previously awarded to Cruz and subsequently paid to him pursuant to the EAJA; payment should be made within seven days of receipt of the 406(b) fees.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 11th day of August 2022.

S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge